COMDISCO, INC., Plaintiff-Appellee, v. DUN AND BRADSTREET CORPORATION *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—95—3654

Opinion filed December 16, 1996.

Rudnick & Wolfe, of Chicago (Seymour Simon, Marc P. Seidler, and Fredric A. Cohen, of counsel), for appellants.

Mayer, Brown & Platt, of Chicago (Alan N. Salpeter, Howard J. Roin, and Jeffrey W. Sarles, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendants Dun & Bradstreet Corporation (D&B), Dun & Bradstreet Computer Leasing, Inc. (D&BCL), and Fillupar Leasing Partnership (Fillupar) appeal an order of the circuit court of Cook County denying their motion to compel arbitration of disputes between defendants and plaintiff Comdisco, Inc. (Comdisco).

The record on appeal indicates that on March 20, 1995, Comdisco filed a "Verified Complaint for a Declaratory Judgment and Other

Relief" in the circuit court of Cook County. In this complaint, Comdisco alleged that on or about September 3, 1991, it entered into two sale/leaseback transactions with D&B and Fillupar; given that the agreements used "virtually similar" language, the complaint refers to the transactions as one. Fillupar later came under the control of D&BCL. D&B, which allegedly had a $35.1 million investment in the transaction, approved the deal on July 17, 1991; the closing occurred on September 3, 1991.

Fillupar allegedly purchased approximately $185 million worth of IBM and Amdahl mainframe computers from Comdisco, which simultaneously leased the equipment from Fillupar on a variety of terms. For example, both leases provided that Comdisco had the right to terminate the leases on an "early termination date." In the event that Comdisco exercised this option, it would pay D&B the "early termination value" of the equipment. One definition of the "early termination value" was the "fair market value" of the equipment on the "early termination date." "Fair market value" was also defined in the leases. Each lease involved several categories of IBM and Amdahl equipment; each category had a different "early termination date."

Comdisco exercised its early termination rights as to all categories of equipment on the respective early termination dates. Subsequently, in June 1992, a dispute arose between the parties regarding the value of the equipment. Comdisco took the position that the fair market value should be determined as of the early termination date as stated in the agreement. D&B took the position that fair market value should be determined by assuming that the early termination date was a delivery date, with the fair market value being determined as of a date 30 to 45 days prior to the termination date, which would represent the date upon which the parties typically would have agreed upon a price. Comdisco estimated that D&B's date could result in an additional $4 million of exposure. The parties exchanged letters in June 1992 and met in July 1992 in an effort to resolve the dispute, but were not successful.

In September 1992, the parties exchanged letters regarding a proposed arbitration of their dispute. A draft of an agreement to submit the dispute to arbitration was being discussed by the parties by May 1994. In November 1994, the parties executed an arbitration agreement (Agreement). The first paragraph of the Agreement reads as follows:

> "1. *AGREEMENT TO ARBITRATE.* The parties hereto hereby agree to submit to binding arbitration, in accordance with the terms of this Agreement, the disputes which have arisen (A) be-

tween Fillupar and Comdisco concerning the amounts, if any, owed by Comdisco to Fillupar under the terms of the Equipment Leases as a result of Comdisco's exercise of its early termination options with respect to each category of leased equipment, and (B) between Dun & Bradstreet and Comdisco concerning the amounts, if any, owed by Comdisco to Dun & Bradstreet under the Equipment Value Certificates."

On November 11, 1994, the parties retained former Judge Nicholas J. Bua to arbitrate the dispute.

The parties conducted discovery in March 1995. D&B allegedly raised claims that it was entitled to a "volume premium" and an "in-place premium" for the first time during this discovery period. D&B alleged that these premiums would result in Comdisco owing an additional $18 million above what Comdisco had already paid for the equipment.

Accordingly, count I of the complaint sought a declaration that the Agreement was null and void. Count II alleged breach of contract. Count III alleged a breach of the covenants of good faith and fair dealing. Count IV alleged that defendants fraudulently induced Comdisco to enter into the Agreement. Count V alleged that there was no "meeting of the minds" regarding the Agreement. Count VI sought injunctive relief, staying the arbitration until the court determined which issues were arbitrable.

On April 6, 1995, the defendants filed a motion to compel arbitration pursuant to the Agreement. On May 3, 1995, the trial court entered an agreed order stating that defendants were not required to further answer or otherwise plead until the court ruled on the motion to compel. On October 13, 1995, following argument on the matter, the trial court entered an order denying defendant's motion to compel arbitration. The transcript of proceedings shows that the trial court based its ruling on counts IV and V of Comdisco's verified complaint. Defendants filed a notice of appeal on October 24, 1995.

# I

■ Initially, Comdisco contends that this court lacks jurisdiction to hear defendants' appeal. In *Notaro v. Nor-Evan Corp.*, 98 Ill. 2d 268, 456 N.E.2d 93 (1983), the supreme court held that the denial of a motion to compel arbitration is appealable under Rule 307(a)(1) because it is akin to a denial of injunctive relief. Comdisco maintains that while the order states that the motion to compel arbitration is denied, the substance of the order is not injunctive because the trial court merely sought to defer a decision on the merits pending an evidentiary hearing.

Comdisco relies on *Hamilton v. Williams*, 237 Ill. App. 3d 765,

776, 604 N.E.2d 470, 478 (1992), for the proposition that the appealability of an injunctive order is to be determined by the substance of the action. However, in *Hamilton*, this court distinguished *Notaro*, stating that the order in *Hamilton* was not entered in response to a motion to compel arbitration and addressed the implementation of an agreed arbitration procedure, rather than the arbitrability of the dispute. *Hamilton*, 237 Ill. App. 3d at 777, 604 N.E.2d at 478. The order in this case was entered in response to the motion to compel arbitration and addressed the arbitrability of the dispute. Thus, this case is closer to *Notaro* than *Hamilton*.

Indeed, the *Notaro* court relied in part on *C. Itoh & Co. (America) Inc. v. Jordan International Co.*, 552 F.2d 1228 (7th Cir. 1977), in which the court stated as follows:

"Itoh's contention that, although ordinarily the denial of a stay pending arbitration would be appealable, it is not appealable where, as here, the district court never determined whether there existed a written agreement to arbitrate between Jordan and Itoh is completely without merit. Whether there exists such a written arbitration agreement is relevant to the question of whether the district court properly denied the stay but not to the question of whether its order is appealable." *C. Itoh*, 552 F.2d at 1230 n.2.

Moreover, where the language of the order appealed from is clear and unambiguous, it is generally not subject to construction and cannot be controlled by an alleged intent or purpose not expressed therein. *Governale v. Northwest Community Hospital*, 147 Ill. App. 3d 590, 593, 497 N.E.2d 1318, 1320 (1986). The order in this case unambiguously denies the motion to compel arbitration. Comdisco also cites various federal cases, but fails to cite any case stating that federal law controls the appealability of a state court order denying a motion to compel arbitration. Accordingly, this court now turns to the merits of the dispute.

## II

■ The sole issue before this court for review as an interlocutory appeal is whether there was a showing sufficient to sustain the order of the trial court denying the motion to compel arbitration. See *Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional Transportation Authority*, 262 Ill. App. 3d 334, 337, 634 N.E.2d 469, 472 (1994). Defendants also cite *Amalgamated Transit Union* for the proposition that where the trial court determines the case without evidentiary hearings and without making any findings as to any factual issues, its decision is reviewable *de novo*. *Amalgamated Transit Union*, 262 Ill. App. 3d at 337, 634 N.E.2d at 472. However, in *Amalgamated Transit Union*, this court was faced with

a review of an order *granting* a motion to compel arbitration without an evidentiary hearing. In this case, the trial court *denied* a motion to compel arbitration without an evidentiary hearing.

In *Farris v. Hedgepeth*, 58 Ill. App. 3d 1040, 374 N.E.2d 1086 (1978), the defendants took an interlocutory appeal before the trial court was able to hold evidentiary hearings on the arbitrability of the issues in dispute. The *Farris* court reversed and remanded, holding that the Uniform Arbitration Act contemplated a substantive disposition of a motion to stay arbitration before a stay order is entered. *Farris*, 58 Ill. App. 3d at 1044, 374 N.E.2d at 1089.

This case differs from *Farris* in two respects. First, this case involves the denial of a motion to compel arbitration, rather than a motion to stay arbitration. However, this is a difference without a distinction, as the effect on the parties is substantially similar. Indeed, the effect of the order in this case was similar to granting plaintiff the injunctive relief sought in count VI of its complaint without requiring plaintiff to show the general legal prerequisites for injunctive relief.

Second, *Farris* arose under the Uniform Arbitration Act, whereas the agreement in this case states that it is to be governed by the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (1970)). However, section 4 of the Federal Arbitration Act, which defendants cited in their motion to compel arbitration, provides in part:

> "If the making of the arbitration agreement \*\*\* be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4 (1970).

Section 2(a) of the Uniform Arbitration Act, as adopted in Illinois at the time *Farris* was decided, provided in part:

> "[I]f the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." Ill. Rev. Stat. 1975, ch. 10, par. 2(a), quoted in *Farris*, 58 Ill. App. 3d at 1042-43, 374 N.E.2d at 1088.

This same language remains in section 2(a) to this day. 710 ILCS 5/2(a) (West 1994). Thus, *Farris* does not conflict with the federal law on this particular point.

Of course, our conclusion that the portions of the statutes quoted above are basically similar should not be misinterpreted as holding that the two statutes are identical in all respects. For example, it is far from clear that section 4 of the Federal Arbitration Act applies to state court proceedings. See, *e.g.*, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468,

476-77 n.6, 103 L. Ed. 2d 488, 498-99 n.6, 109 S. Ct. 1248, 1254 n.6 (1989); *Southland Corp. v. Keating*, 465 U.S. 1, 16 & n.10, 79 L. Ed. 2d 1, 15 & n.10, 104 S. Ct. 852, 861 & n.10 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26 & n.35, 74 L. Ed. 2d 765, 786 & n.35, 103 S. Ct. 927, 942 & n.35 (1983). It is clear, however, that the Federal Rules of Civil Procedure, which are expressly mentioned in section 4 of the Federal Arbitration Act, "do not apply in such state-court proceedings." *Southland Corp.*, 465 U.S. at 16 n.10, 79 L. Ed. 2d at 15 n.10, 104 S. Ct. at 861 n.10. Thus, state procedural law (including *Farris*) is controlling in this case. See also W. Nissen, *The Federal Takeover of Arbitration Law*, 83 Ill. B.J. 584, 586-87 (1995).

In sum, the trial court erred in denying the motion to compel arbitration without ruling on the arbitrability of the dispute. Absent such a ruling, there is not a showing sufficient to sustain the denial of the motion. On remand, the court "shall proceed summarily to the determination of the issue." Generally, a "summary proceeding" may be defined as

> "a civil or criminal proceeding in the nature of a trial conducted without the formalities (as indictment, pleadings, and a jury) required by the common law, authorized by statute, and used for the speedy and peremptory disposition of some minor matter."

Webster's Third New International Dictionary 2289 (1986). Although the entirety of the dispute in this case might not normally be thought of as a "minor matter," the issue of arbitrability is far more narrow. The summary proceeding in this case is not merely authorized by statute, but is mandated by statute. The issue of whether a dispute is or is not within the scope of an arbitration clause should be determined at the earliest possible moment. *Farris*, 58 Ill. App. 3d at 1043, 374 N.E.2d at 1088.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY and WOLFSON, JJ., concur.