# Illinois Official Reports

## Appellate Court

---

### *Brookner v. General Motors Corp.*, 2019 IL App (3d) 170629

---

| | |
|---|---|
| Appellate Court Caption | ERIC BROOKNER, Plaintiff-Appellant, v. GENERAL MOTORS CORPORATION; WEST JEFF AUTO SALES, LLC, d/b/a Hawk Cadillac; and U.S. BANK, N.A., Defendants (West Jeff Auto Sales, LLC, d/b/a Hawk Cadillac, Defendant-Appellee). |
| District & No. | Third District<br>Docket No. 3-17-0629 |
| Filed | May 22, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 17-L-240; the Hon. Raymond E. Rossi, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William G. Hutul, of William G. Hutul, P.C., of Carol Stream, Julie L. Simpson, of Simpson Law Group, LLC, of St. Charles, and Dmitry N. Feofanov, of ChicagoLemonLaw.com, P.C., of Lyndon, for appellant.<br><br>Steve M. Varhola and Mark M. Lyman, of Lyman Law Firm, LLC, of Chicago, for appellee. |

PRESIDING JUSTICE SCHMIDT delivered the judgment of the
                     court, with opinion.
                     Justice Holdridge concurred in the judgment and opinion.
                     Justice McDade dissented, with opinion.


**OPINION**

¶ 1      The plaintiff, Erik Brookner, filed a civil complaint against several defendants, including
         the only defendant that is a party to this appeal, West Jeff Auto Sales, LLC, d/b/a Hawk
         Cadillac (dealership), based on Brookner's purchase of a vehicle. The dealership filed a motion
         to compel arbitration, which the trial court granted after finding Brookner signed an arbitration
         agreement as part of the vehicle purchase. The court stayed all further proceedings. Brookner
         appealed. On appeal, he challenges the court's decision to grant the motion to compel
         arbitration. We affirm.

¶ 2                                          FACTS
¶ 3      In March 2017, Brookner filed a civil complaint alleging, *inter alia*, that the dealership was
         liable for breach of written warranty, breach of implied warranty, and a violation of the
         Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2014)).
         The complaint alleged that on October 17, 2015, Brookner purchased a new 2016 Cadillac
         Escalade from the dealership for $84,000. However, he claimed that the dealership gave him a
         2015 Cadillac Escalade instead. This vehicle had various nonconformities and defects,
         including engine problems. Further, the complaint alleged that the dealership committed
         intentional and willful fraud by forging Brookner's signature on documents related to the 2015
         Escalade.

¶ 4      Documents attached to the complaint included a retail installment contract dated October
         17, 2015, for a 2016 black Escalade. Also included were service invoices dated December 20,
         2016, and February 7, 2017, for a 2015 black Escalade. The vehicle identification number
         (VIN) in the installment contract for the 2016 Escalade differed from the VIN in the service
         invoices for the 2015 Escalade.

¶ 5      The dealership filed a motion to compel arbitration and/or dismiss the complaint and stay
         further proceedings. The dealership alleged that Brookner's civil complaint was filed in
         contravention of an arbitration agreement that he signed on October 17, 2015. The dealership
         attached a copy of the arbitration agreement to the motion. The agreement essentially stated
         that if any dispute arose over the vehicle, such dispute would go to an arbitrator and any court
         proceedings would be stayed. The arbitration agreement contained a signature above the name
         "Eric R. Brookner" but was not signed on behalf of the dealership.

¶ 6      Brookner then filed a motion requesting an evidentiary hearing on the validity of the
         arbitration agreement. He alleged that the signature on the document was not his, and he did
         not give anyone the authority to sign his name on his behalf. Brookner asserted in the affidavit
         attached to the motion that he had signed purchase documents for a 2016 Escalade including a
         retail installment contract, order for a motor vehicle, odometer statement, and sales tax
         transaction return. In the lower left hand corner of the order for motor vehicle it reads: "I HAVE
         READ, SIGNED AND RECEIVED COPIES OF THE ARBITRATION RIDER *** WHEN

I SIGNED THIS ORDER AND AGREE THEY ARE PART OF THIS ORDER." Brookner's initials appear underneath this language.

¶ 7 Brookner also filed a motion for a protective order and to compel the dealership to produce original documents. Brookner alleged that the dealership told him that he had signed documents related to a 2015 Escalade and that U.S. Bank, N.A., delivered copies of these documents to him. He alleged that the signatures on those documents were not his.

¶ 8 In his response to the dealership's motion to compel arbitration and/or dismiss, Brookner questioned the validity of the arbitration agreement because the signature was not his and because the document was not signed by anyone from the dealership. Further, Brookner emphasized that the document had not been authenticated via affidavit and was therefore an improper basis for the dealership's motion.

¶ 9 The dealership filed a reply in which it gave its account of the sale of an Escalade to Brookner. The dealership claimed that Brookner came in on October 3, 2015, and told salesperson Melinda McCorkle he wanted to buy a new Escalade. McCorkle showed him a 2016 black Escalade, but it lacked the accessories Brookner wanted so he told her he was not interested. Brookner returned to the dealership on October 12, 2015, and told McCorkle that he wanted to buy "a grey Cadillac Escalade with Kona interior and power running boards, and that the vehicle's year did not matter." The dealership did not have such a vehicle, but on October 15, 2015, the dealership's sales manager located a "dark granite metallic" 2015 Escalade, so he left a voicemail for Brookner about it. On October 17, 2015, Brookner returned to the dealership, looked at the 2015 Escalade, and decided to purchase it. The sales manager prepared a manager's sheet including the information for the 2015 Escalade. While preparing the documents necessary for the sale, the dealership's finance manager inadvertently inserted information for the 2016 Escalade McCorkle originally showed Brookner. Brookner signed the documents, including the arbitration agreement. On the same day, the dealership's finance director realized that some of the documents referred to the incorrect vehicle. He called Brookner, explained the situation, and requested that Brookner come in to re-sign some documents. Two days later, Brookner returned to the dealership and signed several revised documents, which were subsequently bundled with some of the original documents. Affidavits from McCorkle, the finance manager, the sales manager, and the finance director were attached to the reply.

¶ 10 The dealership's reply also alleged that Brookner knew he had purchased a 2015 Escalade, evidenced in part by the fact that he obtained insurance for a 2015 Escalade and that he never told the dealership he was given the wrong vehicle until he filed his civil complaint. The reply also alleged that Brookner brought the 2015 Escalade into the dealership for service several times over a 13-month period.

¶ 11 On August 22, 2017, the trial court heard arguments on the dealership's motion to compel arbitration. The court granted the dealership's motion after finding that "[w]hether the Plaintiff signed purchase documents for a 2015 or a 2016 Escalade, he a [*sic*] signed a document compelling arbitration in the event of a dispute." The court ordered all further proceedings stayed pending the outcome of arbitration. The court also denied the motion for an evidentiary hearing as to whether the arbitration agreement was forged.

¶ 12 Brookner appeals.

## ANALYSIS

On appeal, Brookner argues that the trial court erred when it granted the dealership's motion to compel arbitration. Specifically, he contends that the court should have held an evidentiary hearing on whether the arbitration agreement was forged. The bottom line with regard to the underlying dispute is that Brookner claims he purchased a 2016 vehicle but received a 2015 vehicle. The dealership claims Brookner knew he was purchasing and did purchase a 2015 vehicle.

Initially, we note that this is an appeal from an interlocutory order; nonetheless, this court has jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. July 1, 2017) because motions to compel arbitration are analogous to motions seeking injunctive relief. *Nagle v. Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, P.C.*, 244 Ill. App. 3d 920, 924 (1993). "The only question before us on an interlocutory appeal of this type is whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought." *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 496 (2002).

Contrary to Brookner's claim, *de novo* is not the appropriate standard of review. When factual findings are made, the decision of whether to compel arbitration is not made as a matter of law. See *Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional Transportation Authority*, 262 Ill. App. 3d 334, 337 (1994) (holding *de novo* was the appropriate standard of review of a trial court's decision on a motion to compel arbitration that involved only the legal issue of whether the dispute was arbitrable). Here, the trial court made factual findings that Brookner signed the arbitration agreement and that it was in fact valid. Accordingly, we review the court's decision in this case for an abuse of discretion. See *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1105 (2001).

"At a hearing to compel arbitration, the only issue for the trial court is whether an agreement exists to arbitrate the dispute in question." *Nagle*, 244 Ill. App. 3d at 925 (citing *Nelson v. Roger J. Lange & Co.*, 229 Ill. App. 3d 909, 911 (1992)). Whether a contract to arbitrate exists must be determined by the trial court, not an arbitrator. *Menard County Housing Authority v. Johnco Construction, Inc.*, 341 Ill. App. 3d 460, 463 (2003). " '[I]f the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised ***.' " *Id.* (quoting 710 ILCS 5/2(a) (West 2000)). "[T]he [Uniform Arbitration] Act contemplates a substantive disposition of the issues presented to the court." *Cohen v. Blockbuster Entertainment, Inc.*, 338 Ill. App. 3d 171, 177 (2003). "Where a trial court has failed to articulate any specific reasons for ruling on the motion to compel arbitration, the court has not issued a substantive disposition." *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 27 (citing *Onni v. Apartment Investment & Management Co.*, 344 Ill. App. 3d 1099, 1104 (2003), and *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 285 Ill. App. 3d 796, 801 (1996)).

In this case, Brookner denied the existence of a valid arbitration agreement. The trial court found at the hearing on the motion to compel arbitration that,

> "[w]hether the Plaintiff signed purchase documents for a 2015 or a 2016 Escalade, he a [*sic*] signed a document compelling arbitration in the event of a dispute. So[,] I am going to grant the order compelling the Plaintiff to submit all claims to binding arbitration pursuant to the documents, ***."

The trial court made clear in its ruling and order that it found Brookner had signed an agreement to arbitrate any disputes resulting from his purchase of the vehicle. Inherent in the

court's finding of a valid arbitration agreement was a finding that it was not the product of forgery. "Whether under federal rules or state law, there can be no forced arbitration without a valid contract to arbitrate." *Midland Funding, LLC v. Raney*, 2018 IL App (5th) 160479, ¶ 19 (citing *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 226 (2008); *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 25 (2005); *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 510 (2004); *Aste v. Metropolitan Life Insurance Co.*, 312 Ill. App. 3d 972, 975 (2000)); see also *Neal v. LaRiva*, 765 F.3d 788, 790 (7th Cir. 2014) (a forged contract to arbitrate is not judicially enforceable).

¶ 19      Brookner's contention that the trial court erred in not holding an evidentiary hearing is unwarranted. Section 2(a) does not require a formal evidentiary hearing. See *Comdisco, Inc.*, 285 Ill. App. 3d at 801; see also *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22 (1983) (interpreting similar language in the federal arbitration statute (9 U.S.C. § 4 (1976)) to require "an expeditious and summary hearing, with only restricted inquiry into factual issues"); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) (holding that when material factual disputes exist regarding whether the parties agreed to arbitrate, the federal arbitration statute contemplates an expeditious resolution of those issues, rather than "death by discovery"). Further, section 2(a) of the Uniform Arbitration Act calls for only a summary determination of the issues at hand. 710 ILCS 5/2(a) (West 2014). In *Comdisco*, the reviewing court noted that a "summary proceeding" can be defined as,

> " 'a civil or criminal proceeding in the nature of a trial conducted without the formalities (as indictment, pleadings, and a jury) required by the common law, authorized by statute, and used for the speedy and peremptory disposition of some minor matter.' " *Comdisco, Inc.*, 285 Ill. App. 3d at 801 (quoting Webster's Third New International Dictionary 2289 (1986)).

Accordingly, the hearing on the motion to compel arbitration was sufficient to meet the standard defined in *Comdisco*. Requiring an evidentiary hearing in this matter would be duplicative and a waste of judicial resources. The evidence presented at any hearing on remand concerning the issue of forgery would be similar, if not identical, to that submitted to the trial court when it made the decision to compel arbitration. The trial court's factual finding that Brookner signed the agreement was a substantive determination of whether the arbitration agreement was valid and whether it was forged. The court in its ruling and order articulated a specific reason for ruling on the motion to compel arbitration. Therefore, there is a sufficient showing to sustain the order of the trial court granting the motion to compel arbitration.

¶ 20      We hold that the trial court did not abuse its discretion in granting the motion to compel arbitration.

¶ 21                                    CONCLUSION

¶ 22      For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 23      Affirmed.

¶ 24      JUSTICE McDADE, dissenting:

¶ 25      I respectfully disagree with the majority's conclusion that the circuit court did not abuse its discretion when it granted the motion to compel arbitration.

¶ 26 I would find that the hearing on the motion was insufficient to address Brookner's argument that the arbitration agreement was invalid. The circuit court did not receive evidence on, or even inquire into, whether the agreement was valid. Rather, the court simply found that Brookner had in fact signed an arbitration agreement. While the court was concerned that addressing the forgery issue was "the subject matter of the trial," the statute required the court to consider this issue before it could order arbitration. See 710 ILCS 5/2(a) (West 2014); *Cohen*, 338 Ill. App. 3d at 177 (holding that "where a party denies the existence of the arbitration agreement, the [Uniform Arbitration] Act contemplates a substantive disposition of the issues presented to the court"). Because that issue was not considered, we cannot say that there was a sufficient showing to sustain the court's order. See *Bass*, 328 Ill. App. 3d at 496; *Cohen*, 338 Ill. App. 3d at 178.

¶ 27 I acknowledge that section 2(a) of the Uniform Arbitration Act calls for only a summary determination of the issue at hand (710 ILCS 5/2(a) (West 2014)) and that the First District has offered a definition of summary proceedings (*Comdisco*, 285 Ill. App. 3d at 801). However, even though section 2(a) may not contemplate a formal evidentiary hearing, I believe the circuit court should have received evidence and made a substantive determination on the issue of whether the arbitration agreement was forged before it decided to order arbitration. See *id.*; see also *Moses H. Cone Memorial Hospital*, 460 U.S. at 22; *Howard*, 748 F.3d at 978.