2022 IL App (4th) 210458

NO. 4-21-0458

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 28, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MARK MASON, as Independent Administrator of the | ) | Appeal from the |
| Estate of Doris Mason, Deceased, | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Adams County |
| v. | ) | No. 20L63 |
| ST. VINCENT'S HOME, INC., an Illinois Corporation, | ) | |
| d/b/a St. Vincent's Home; WDM HEALTH SERVICES, | ) | |
| INC., an Illinois Corporation; DEANNA SMITH; | ) | Honorable |
| MICHELLE WORTMAN; and KAYLAN ELLERMAN, | ) | Scott D. Larson, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Harris and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1    Pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), plaintiff, Mark Mason, as the independent administrator of the estate of his mother Doris Mason, deceased (decedent), appeals the Adams County circuit court's July 21, 2021, order granting in part the motion to dismiss and compel arbitration brought by defendants, St. Vincent's Home, Inc. (Nursing Home); WDM Health Services, Inc.; Deanna Smith; Michelle Wortman; and Kaylan Ellerman. Plaintiff had signed a contract for services on decedent's behalf with the Nursing Home, and the contract contained an arbitration clause. After decedent's death, plaintiff filed an 11-count complaint against defendants for injuries decedent suffered while under defendants' care. In its order, the court stayed the counts in plaintiff's complaint that were brought under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2018)) and compelled arbitration on the negligence

counts and the count under the Nursing Home Care Act (Care Act) (210 ILCS 45/1-101 *et seq.* (West 2018)). The negligence counts and the Care Act count were brought pursuant to the Survival Act (755 ILCS 5/27-6 (West 2018)).

¶ 2        On appeal, plaintiff contends the arbitration clause in the contract for services between decedent and the Nursing Home was unenforceable because (1) the contract was procedurally and substantively unconscionable, (2) decedent's health care power of attorney did not authorize plaintiff to bind decedent to arbitration, and (3) the contract terminated upon decedent's death. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On December 11, 2018, plaintiff signed numerous documents to have decedent reside at the Nursing Home. The first document was an admissions agreement. The agreement began as follows:

> "We are pleased to inform you that Doris Mason, hereafter referred to as RESIDENT has been accepted as a resident of St. Vincent's Home, Inc. hereafter referred to as FACILITY. Such acceptance is contingent on completing the below requirements, and FACILITY reserves the right to terminate this acceptance if the below requirements are not completed within fourteen (14) days.
>
> Resident, resident's Power of Attorney (POA), resident's representative, and/or guardian understands that for the facility to provide healthcare services to the resident that there is a list of documents and paperwork to be completed at the facility within 14 days of admission."

The document then went on to list 12 required documents, including the contract for services and power of attorney addendum. The arbitration clause was contained in the contract for services, and

- 2 -

the language of the clause is set forth in the analysis section of this order. The contract for services also had a provision stating, "In the event of Resident's death, this Contract terminates automatically." Further, in the contract for services, plaintiff was designated as the resident's representative and decedent was designated as the guarantor. Plaintiff signed the contract for services on the resident line, and Ashley Bronestine signed on behalf of the Nursing Home. The guarantor signature lines were left blank. The contract for services required decedent to provide the Nursing Home a copy of the written agreement between decedent and plaintiff that authorized plaintiff to execute the contract on decedent's behalf. Plaintiff also signed the power of attorney addendum on December 11, 2018, indicating he was decedent's power of attorney for health care. Decedent's power of attorney for health care contained in the record in this case was dated December 12, 2018.

¶ 5        Decedent was a resident of the Nursing Home from December 12, 2018, through October 3, 2019, the date of her death. On January 14, 2019, decedent suffered an unwitnessed fall walking to the bathroom, which resulted in a left distal femur fracture. Decedent underwent an open reduction and internal fixation on her left femur fracture. Additionally, decedent suffered burns to her right hip on the following dates: (1) February 20, 2019; (2) February 25, 2019; (3) March 4, 2019; (4) April 4, 2019; and (5) May 7, 2019.

¶ 6        In December 2020, plaintiff filed a complaint against defendants, alleging the following causes of action: (1) a violation of the Care Act against the Nursing Home; (2) a negligence claim against the Nursing Home; (3) a claim under the Wrongful Death Act against the Nursing Home; (4) a negligence claim against WDM Health Services, Inc.; (5) a claim under the Wrongful Death Act against WDM Health Services, Inc.; (6) a negligence claim against Smith; (7) a claim under the Wrongful Death Act against Smith; (8) a negligence claim against Wortman;

(9) a claim under the Wrongful Death Act against Wortman; (10) a negligence claim against Ellerman; and (11) a claim under the Wrongful Death Act against Ellerman.

¶ 7 In February 2021, defendants filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619 (West 2020)) and compel arbitration pursuant to the terms of the arbitration clause. Defendants attached a copy of plaintiff's complaint and the contract for services between the Nursing Home and decedent. On March 17, 2021, the circuit court entered an order granting defendants 28 days to answer plaintiff's interrogatories and allowing plaintiff to conduct a discovery deposition of Bronestine.

¶ 8 The Nursing Home filed its answers to plaintiff's interrogatories. Question six asked whether the signing of the contract for services between decedent and the Nursing Home was required for decedent to remain at the Nursing Home. The Nursing Home replied, "Residents and/or their representatives are given approximately 14 days to execute admission paperwork, but there may be circumstances in which it is not executed according to this policy." Question seven asked if decedent would have been able to remain at the Nursing Home if the contract for services between decedent and the Nursing Home was not signed. The Nursing Home answered, "In general, yes, depending on the factual circumstances of a particular resident." The Nursing Home's answers also indicated decedent was accepted as a potential resident at the time plaintiff signed the contract for services and the contract for services was a standard contract.

¶ 9 The deposition of Bronestine was taken on May 11, 2021. Bronestine's relevant deposition testimony is set forth in the analysis section of this opinion.

¶ 10 Plaintiff filed a response to defendant's motion to dismiss and compel arbitration, asserting plaintiff did not have legal authority to bind decedent to the contract for services because he lacked actual authority and held only a power of attorney for health care and not a power of

attorney for property. Plaintiff also argued the arbitration clause was unenforceable because it was procedurally and substantively unconscionable and the contract for services was unenforceable because it terminated upon decedent's death. To his response, plaintiff attached his complaint, the contract for services, the motion to compel arbitration, the circuit court's discovery orders, the Nursing Home's answers to interrogatories, Bronestine's deposition, and his own affidavit. In his affidavit, plaintiff stated no explanation of the arbitration clause or waiver of rights contained in the clause was given to him before he signed the contract for services. He denied receiving any explanation of the contract for services and the other numerous documents he signed on December 11, 2018. Plaintiff also stated it was his understanding the contract for services between decedent and the Nursing Home was a form document that could not be changed in any way. Plaintiff further noted, if someone would have explained arbitration to him, he would not have signed the paperwork because he would not have agreed to sign away such rights.

¶ 11    Defendants filed a reply, which attached, *inter alia*, the documentation of payment source addendum to the contract for services, which stated the first source of payment for the resident's charges while at the Nursing Home was private pay and listed decedent's name.

¶ 12    On July 16, 2021, the circuit court held a hearing on defendants' motion to dismiss and compel arbitration. At the hearing, plaintiff's counsel began her argument by noting the following:

>   "First and foremost, we are not contending that he did not have a power of attorney of healthcare. That's very clear. He had a power of attorney of healthcare. However, he did not have property."

¶ 13    In granting the motion to compel arbitration on the negligence counts and Care Act count, the circuit court found the arbitration clause was part of the contract for services and the

contract was signed. It also found plaintiff had a power of attorney for health care. The court further concluded the contract for services was not procedurally or substantively unconscionable. As to relief, the court separated the claims under the Wrongful Death Act from the other claims. It stayed the wrongful death claims and compelled arbitration on the other claims. The court did not dismiss any of the claims and refused to decide whether plaintiff could request statutory rights under the Care Act if he prevailed on the Care Act claim at arbitration. The court entered its written order on July 21, 2021.

¶ 14　　　　On August 9, 2021, plaintiff filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). See *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11, 761 N.E.2d 724, 730 (2001) (noting a circuit court's order compelling arbitration is injunctive in nature and thus subject to interlocutory appeal under Rule 307(a)(1)).

¶ 15　　　　　　　　　　　　　II. ANALYSIS

¶ 16　　　　　　　　　　　　A. Standard of Review

¶ 17　　　　Plaintiff contends the appropriate standard of review is *de novo*. He notes defendants brought their motion to dismiss and compel arbitration pursuant to section 2-619 of the Procedure Code (735 ILCS 5/2-619 (West 2020)) and a ruling on such motions is reviewed *de novo*. See *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 23-24, 820 N.E.2d 418, 421 (2004). Plaintiff also points out the review of a determination of whether a contract or a portion of a contract is unconscionable is *de novo*. *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22, 857 N.E.2d 250, 264 (2006).

¶ 18　　　　Defendants contend the construction of an arbitration agreement is reviewed *de novo* but argue the proper standard of review for the other matters is an abuse of discretion.

Specifically, they contend the general standard of review in an interlocutory appeal is whether the circuit court abused its discretion in granting or denying the interlocutory relief requested. See *Yandell v. Church Mutual Insurance Co.*, 274 Ill. App. 3d 828, 831, 654 N.E.2d 1388, 1389 (1995). Defendants also point out that, when factual findings have been made, the decision of whether to compel arbitration is reviewed for an abuse of discretion. See *Brookner v. General Motors Corp.*, 2019 IL App (3d) 170629, ¶ 16, 129 N.E.3d 694.

¶ 19        Here, in its oral ruling, the circuit court stated it was not dismissing plaintiff's action but staying the litigation pending arbitration. Thus, we are not reviewing a section 2-619 dismissal. Moreover, in considering the parties' supporting materials, the court made factual determinations in granting the motion to compel arbitration. Thus, we will apply a *de novo* standard of review to a matter of contract construction and whether the arbitration provision is unconscionable but will review the decision to compel arbitration for an abuse of discretion.

¶ 20                            B. Validity of the Contract

¶ 21        Plaintiff contends the arbitration clause of the contract for services is unenforceable because it is substantively and procedurally unconscionable. Defendants argue the circuit court's finding the arbitration clause was enforceable was not erroneous. The arbitration clause of the contract for services between the decedent and the Nursing Home was as follows:

"SECTION XI. ARBITRATION

Except as prohibited by applicable law, any action, dispute, claim, or controversy related to the quality of health care services provided pursuant to this Contract (*e.g.*, whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between Resident and St. Vincent's, any past, present or future incidents, omissions, acts, errors, practices or

occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by an arbitrator approved by Resident and St. Vincent's. The costs of the arbitration will be divided equally between Resident and St. Vincent's. The decision of the arbitrator will be final. The site of the arbitration shall be (Quincy, Illinois). This arbitration contract is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act. The parties voluntarily and knowingly waive any right they have to a jury trial. The parties also agree that neither will have the right to participate as a representative or member of any class of claimants pertaining to a claim subject to arbitration under this Contract.

The provisions of this Section XII [*sic*] will not apply to St. Vincent's decision to transfer or discharge the Resident for medical reasons, for the Resident's physical safety, for the physical safety of other residents, the facility staff or facility visitors, or for either late payment or nonpayment for Resident's stay if St. Vincent's complies with the provisions of Section VIII."

Section VIII of the contract for services addressed the additional rights and responsibilities of the Nursing Home.

¶ 22                          1. *Procedurally Unconscionable*

¶ 23      Our supreme court has defined procedurally unconscionable as follows:

" 'Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. [Citations.] Factors

- 8 -

to be considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability. [Citation.] To be a part of the bargain, a provision limiting the defendant's liability must, unless incorporated into the contract through prior course of dealings or trade usage, have been bargained for, brought to the purchaser's attention or be conspicuous. *** Nor does the mere fact that both parties are businessmen justify the utilization of unfair surprise to the detriment of one of the parties ***. [Citation.] This requirement that the seller obtain the knowing assent of the buyer "does not detract from the freedom to contract, unless that phrase denotes the freedom to impose the onerous terms of one's carefully drawn printed document on an unsuspecting contractual partner. Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming. The notion of free will has little meaning as applied to one who is ignorant of the consequences of his acts." [Citations.]' " *Kinkel*, 223 Ill. 2d at 23-24 (quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989-90, 408 N.E.2d 403, 410 (1980)).

¶ 24    Plaintiff alleges the arbitration clause in this case was procedurally unconscionable based on the following: (1) all of the admission documents were presented in a single folder, (2) the provision was included in the contract and not a stand-alone document, (3) the provision was not bolded or otherwise distinguished from the rest of the contract, (4) Bronestine spent only 2½ hours

with plaintiff reviewing the admission documents, and (5) the Nursing Home's "somewhat cavalier attitude about signing the contract, likely contributing to residents' lack of understanding about the significance of what they were signing." Defendants claim plaintiff's allegations do not demonstrate procedural unconscionability.

¶ 25 In this case, the arbitration provision was in its own section of the contract and clearly labeled "ARBITRATION." The provision was not hidden in the contract. Additionally, the arbitration provision used straightforward language and clearly stated the parties waived the right to a jury trial. Moreover, Bronestine testified she would briefly go over the admission documents and allow the person to read them. She did not rush a person who was signing the admission papers. Bronestine stated she would have generally explained the arbitration clause and asked the person to read it. She did not recall plaintiff having any questions about the arbitration provision or the contract in general. The fact Bronestine did not tell plaintiff he was waiving decedent's rights under the Care Act does not change our analysis. The arbitration clause was clear the parties were waiving their right to a jury trial, and it has not yet been determined whether decedent's rights under the Care Act have been waived. Additionally, the circumstances of the signing do not suggest coercion or deception. Based on the aforementioned facts, we do not find the circuit court erred by finding the arbitration provision was not procedurally unconscionable.

¶ 26 2. *Substantively Unconscionable*

¶ 27 Our supreme court has defined substantively unconscionable as follows:

" 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. [Citation.] Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and

- 10 -

rights imposed by the bargain, and significant cost-price disparity.' " *Kinkel*, 223 Ill. 2d at 28 (quoting *Maxwell v. Fidelity Financial Services, Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

Plaintiff contends the arbitration provision is so one-sided as to be oppressive because claims brought by the Nursing Home against a resident are not subject to arbitration. He contends the Nursing Home gave up nothing. Specifically, plaintiff argues any claim related to the quality of health care services could only be a claim by a resident against the Nursing Home for injury caused by the nursing home and its staff. According to plaintiff, the exception to the arbitration clause applies to the Nursing Home's claims against a residence for nonpayment and actions involving the Nursing Home's decision to transfer or discharge a resident.

¶ 28 Defendants disagree. They contend the first paragraph of the arbitration clause broadly obligates both the resident and the Nursing Home to submit all manner of claims against the other to arbitration. Moreover, defendants argue the limited exception to arbitration was proper because transfers and discharge decisions are subject to hearings before an administrative law judge with the Department of Public Health and are not heard in the circuit court. They also claim payment disputes are not part of the exception. Additionally, defendants argue the remainder of the arbitration clause shows a relative balance in the duties and obligations imposed on both parties.

¶ 29 The principles of contract construction are similar to those of statutory construction. Our primary objective in construing a contract is to give effect to the parties' intent. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232, 874 N.E.2d 43, 58 (2007). We start by examining "the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher*, 226 Ill. 2d at 233. Moreover, the "contract must be construed as a

- 11 -

whole, viewing each part in light of the others." *Gallagher*, 226 Ill. 2d at 233. If the contract's language is susceptible to more than one meaning, it is ambiguous, and the court may consider extrinsic evidence to ascertain the parties' intent. *Gallagher*, 226 Ill. 2d at 233. Additionally, we note the existence of a "strong public policy in favor of enforcing arbitration agreements." *Kinkel*, 223 Ill. 2d at 47.

¶ 30    The plain language of the arbitration clause is consistent with defendants' argument the arbitration clause applies to more claims than plaintiff asserts. A claim "related to the quality of health care services provided" under the contract is just one of three categories of claims identified in the arbitration clause. The arbitration clause also included causes of action based on (1) "incidents, omissions, acts, errors, practice or occurrence causing injury to either party whereby the other party" may be liable and (2) "any other aspect of the past, present or future relationships between the parties." Defendants noted an action by the Nursing Home for nonpayment would be a matter for arbitration. Plaintiff responded any such dispute would be against Medicare and not decedent because she was a Medicare patient. However, the complaint only stated decedent was a recipient of Medicare at the time of her admission to the Nursing Home, and the supporting evidence indicated she was a private pay patient. Moreover, we agree with defendants the exception to the arbitration provision only applies to the Nursing Home's decision to transfer or discharge a resident for four enumerated reasons, which are also listed in section 300.3300(c)(1) of Title 77 (77 Ill. Adm. Code 300.3300(c)(1)(A)-(D), amended at 35 Ill. Reg. 11419 (eff. June 29, 2011)) as reasons for a facility to involuntarily transfer or discharge a resident. Plaintiff does not disagree with defendants' assertion transfer and discharge decisions are subject to hearing before the administrative law judge with the Department of Public Health. See 77 Ill. Adm. Code 300.3300(m), amended at 35 Ill. Reg. 11419 (eff. June 29, 2011). Thus, the only claims exempted

- 12 -

from the arbitration provision are ones for which the proceedings already must be before an administrative agency and not a court. We disagree with plaintiff the claims subject to arbitration were one-sided.

¶ 31 Additionally, under the arbitration clause, both the resident and the Nursing Home had to approve of the arbitrator. The costs of the arbitration were to be divided equally between the parties. These provisions are also not one-sided.

¶ 32 We agree with plaintiff one aspect of the arbitration clause was one-sided. The arbitration clause did include a provision both parties agreed to not participate as a representative or member of any class of claims pertaining to arbitration under the contract. Plaintiff contends that provision only applies to residents because no one can fathom a class action brought by a class of nursing homes against a patient. Defendants do not dispute that argument in their brief. However, we do not find that provision alone made the arbitration clause so one-sided as to be oppressive.

¶ 33 Moreover, plaintiff has neither shown an overall imbalance in the obligations and rights imposed by the parties' agreement nor a significant cost-price disparity. Plaintiff cites *Kinkel*, 223 Ill. 2d at 42, where our supreme court found the contract's class action waiver was unconscionable and unenforceable. The circumstances forming the basis of the supreme court's conclusion included the contract was one of adhesion, required the customer to arbitrate all claims, did not reveal the cost of arbitration, and contained a liquidated damages clause that allegedly operated as an illegal penalty. *Kinkel*, 223 Ill. 2d at 42. Those provisions created a situation where the cost of vindicating the claim was so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy was either as the representative or a member of a class. *Kinkel*, 223 Ill. 2d at 42. There, the claim was for $150, and the cost for pursuing the claim would

have been $125 plus her attorney fees. *Kinkel*, 223 Ill. 2d at 30. Here, plaintiff has presented no evidence the cost of vindicating a claim would be more than or close to the amount of relief recovered for the claim.

¶ 34    Accordingly, we find the circuit court did not err by finding the arbitration clause was not substantively unconscionable.

¶ 35    C. Plaintiff's Authority to Execute the Contract

¶ 36    Plaintiff also challenges his authority to execute the contract on behalf of decedent. Specifically, plaintiff contends a valid power of attorney for health care was not in existence when plaintiff signed the contract for services and the arbitration clause was not a prerequisite for admission to the Nursing Home. Defendants argue the circuit court did not abuse its discretion by finding plaintiff was authorized to execute the arbitration agreement because (1) plaintiff was the decedent's health care power of attorney on December 11, 2018, (2) the arbitration agreement was required for decedent's admission to the Nursing Home, (3) plaintiff had implied or apparent authority to execute the arbitration agreement on decedent's behalf, and (4) decedent ratified the arbitration agreement.

¶ 37    A person authorized by a health care power of attorney may bind a principal to an arbitration agreement as part of a contract to receive nursing home care when the arbitration provision is integral to the entire agreement and required for admission. *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 141160, ¶ 45, 32 N.E.3d 80. However, a principal will not be bound by an arbitration agreement signed by an agent under a health care power of attorney if the arbitration agreement is separate from the contract for services or not required for admission. *Fiala*, 2015 IL App (2d) 141160, ¶¶ 44-46.

¶ 38    As to whether plaintiff was decedent's power of attorney for health care when he

- 14 -

signed the admissions agreement on December 11, 2018, the evidence showed plaintiff, in his June 18, 2021, response to defendants' motion to dismiss and compel arbitration, stated he had a power of attorney for health care for decedent. Moreover, at the hearing on the motion to dismiss and compel, plaintiff's counsel began her argument by stating they were not contending plaintiff did not have a power of attorney for health care. " 'It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.' " *McMath v. Katholi*, 191 Ill. 2d 251, 255, 730 N.E.2d 1, 3 (2000) (quoting *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543, 475 N.E.2d 817, 818 (1984)). Regardless, the evidence was sufficient for the circuit court to conclude plaintiff was decedent's power of attorney when he signed the admission agreement, even though on the next day decedent signed a power of attorney for health care appointing plaintiff as her agent. The admissions agreement contained a power of attorney addendum. The addendum urged the resident to have a power of attorney for both property and health care. At the bottom of the addendum, blanks were filled in to state the following: "I, Doris Mason, certify that I have a POA of Healthcare, namely, Mark Mason." Under the statement, plaintiff signed and wrote the date of December 11, 2018. The signatory line under the sentence referring to a power of attorney for property was left blank. Additionally, Bronestine testified in her deposition the form the Nursing Home received from the hospital listed plaintiff as a power of attorney and plaintiff stated he was decedent's power of attorney for health care on December 11, 2018. She also testified she would have confirmed plaintiff was decedent's power of attorney before she had him sign the admissions paperwork. Bronestine also explained, if the power of attorney document was not available, she would have asked for another one to be executed.

¶ 39    Regarding whether the arbitration agreement was required for decedent's

- 15 -

admission to the Nursing Home, plaintiff contends the evidence showed arbitration was not required for admission. He notes Bronestine's testimony. In her deposition, Bronestine addressed the necessity of the arbitration clause several times. She testified decedent was already accepted into the Nursing Home when plaintiff signed the admissions contract. According to Bronestine, if plaintiff had refused to sign the admissions agreement because of the arbitration provision, she would have said "that's fine" and taken the issue to a "higher up" in the Nursing Home for plaintiff and the "higher-ups" to agree on terms. She did not make any of those types of decisions. According to Bronestine, Chris Reis, the owner of the Nursing Home, was the most knowledgeable person about the arbitration clause. Bronestine further testified she never had someone request a different agreement. When asked if plaintiff had stated he did not want to arbitrate would decedent still have been admitted into the Nursing Home, Bronestine first answered yes and later answered she did not know. Bronestine testified something had to be signed but she did not know what that would be. The aforementioned evidence supports the circuit court's finding Bronestine was not well-versed on the arbitration clause.

¶ 40　　　　The answers to interrogatories indicated the Nursing Home accepted decedent as a *potential* resident at the time plaintiff signed the contract for services between the Nursing Home and decedent. Moreover, the answers to interrogatories indicated a resident could reside at the Nursing Home without a signed contract (1) because residents or their representatives had 14 days to execute the admission paperwork and (2) possibly based on the factual circumstances of a particular resident. However, as the circuit court noted, the contract in this case was a signed contract, so plaintiff's questions were just hypotheticals. Plaintiff did not directly ask if agreeing to the arbitration clause was required for admission into the Nursing Home.

¶ 41　　　　The contract for services contained the arbitration clause, and it was a standard form

indicating arbitration was required for admission into the Nursing Home. Moreover, the admissions agreement stated decedent's acceptance as a resident in the Nursing Home was contingent on completing the enumerated requirements, which included signing the contract for services. The Nursing Home reserved the right to terminate the acceptance if the requirements were not completed within 14 days. Additionally, in his affidavit, plaintiff understood the contract for services was a form document that could not be changed in any way. The aforementioned evidence shows the arbitration clause was not optional or freestanding. Thus, we find the circuit court did not abuse its discretion by finding plaintiff had the authority based on the power of attorney for health care to agree to arbitration on decedent's behalf. As such, we do not address whether plaintiff had implied or apparent authority to sign the contract for services.

¶ 42                                    D. Decedent's Death

¶ 43        Plaintiff further asserts the contract, including the arbitration clause, terminated by its own terms on decedent's death. Defendants first contend our supreme court's decision in *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, 976 N.E.2d 344, controls and the arbitration agreement applies to plaintiff's claims brought pursuant to the Survival Act. They also argue the arbitration clause survives the contract's termination absent contract language to the contrary. Plaintiff replies defendants fail to cite a case involving a contract that expressly stated it terminated on the death of a party.

¶ 44        In *Carter*, 2012 IL 113204, ¶ 1, our supreme court addressed whether an arbitration agreement between the plaintiff's decedent and the defendant nursing home was enforceable and, if so, whether the plaintiff could be compelled to arbitrate a wrongful death claim against the defendant. The background facts suggest the arbitration agreements executed at the time of the decedent's admissions into the nursing home were separate from another contract. See *Carter*,

2012 IL 113204, ¶ 5. Further, the facts did not state whether the arbitration agreement had a provision the agreement terminated upon the decedent's death. When analyzing the wrongful death claim issue, the court contrasted the claim with an action under the Survival Act (755 ILCS 5/27-6 (West 2006)). *Carter*, 2012 IL 113204, ¶ 34. It explained, "[t]he Survival Act allows an action (such as a claim under the *** Care Act) to survive the death of the injured person." *Carter*, 2012 IL 113204, ¶ 34. While the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)) created a new cause of action that did not accrue until death, the Survival Act allowed the decedent's representative to maintain those statutory or common law actions that had already *accrued prior to the decedent's death. Carter*, 2012 IL 113204, ¶ 34. In reaching its holding the plaintiff was not bound by the decedent's agreement to arbitrate for the wrongful death claim, the supreme court noted the plaintiff was bound to arbitrate the claim that alleged a violation of the Care Act by the defendant brought under the Survival Act. *Carter*, 2012 IL 113204, ¶ 34. The supreme court explained that claim had already accrued to the decedent prior to death and the claim was brought for the benefit of the decedent's estate. *Carter*, 2012 IL 113204, ¶ 34.

¶ 45    While the facts in *Carter* do not suggest the arbitration agreement was part of another contract with a termination upon death clause like the one in this case, the supreme court's analysis is instructive. The supreme court noted a cause of action brought pursuant to the Survival Act accrued prior to the death of the decedent. *Carter*, 2012 IL 113204, ¶ 34. Thus, even with a termination upon death clause, the contract including the arbitration provision would still have been valid when the cause of action accrued. The language of the arbitration clause does not suggest it is inapplicable to claims that accrued before the resident's death but were brought after the resident's death. Moreover, we are not persuaded by the cases cited by plaintiff. None of those cases addressed the applicability of an arbitration clause to a claim that accrued prior to the party's

death but was brought after death. As such, we find plaintiff is bound to arbitrate the claims brought pursuant to the Survival Act.

¶ 46                      E. Attorney Fees Under the Care Act

¶ 47        Plaintiff asks this court to determine whether the arbitration clause prohibits plaintiff from being awarded costs and attorney fees under section 3-602 of the Care Act (210 ILCS 45/3-602 (West 2018)). While the issue of whether a contract to arbitrate exists must be determined by the court (*Menard County Housing Authority v. Johnco Construction, Inc.*, 341 Ill. App. 3d 460, 463, 793 N.E.2d 221, 224 (2003)), matters of contract interpretation are for an arbitrator to decide initially (*Kinkel v. Cingular Wireless, LLC*, 357 Ill. App. 3d 556, 562, 828 N.E.2d 812, 818 (2005)). Since plaintiff's argument is a matter for the arbitrator, we do not address it.

¶ 48                              III. CONCLUSION

¶ 49        For the reasons stated, we affirm the Adams County circuit court's judgment.

¶ 50        Affirmed.

**No. 4-21-0458**

| | |
|---|---|
| **Cite as:** | *Mason v. St. Vincent's Home, Inc.*, 2022 IL App (4th) 210458 |
| **Decision Under Review:** | Appeal from the Circuit Court of Adams County, No. 20-L-63; the Hon. Scott D. Larson, Judge, presiding. |
| **Attorneys for Appellant:** | Michael W. Rathsack, of Law Office of Michael W. Rathsack, of Chicago (Steven M. Levin, , Jaime A. Koziel, and Isabela Bacidore, of counsel), for appellant. |
| **Attorneys for Appellee:** | Melinda S. Kollross, Kathleen M. Klein, and Vanessa Mannings, of Clausen Miller P.C., of Chicago, for appellees. |