COMDISCO, INC., Plaintiff-Appellant, v. DUN AND BRADSTREET CORPORATION *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—98—1935

Opinion filed June 18, 1999.

198

Mayer, Brown & Platt, of Chicago (Alan N. Salpeter, Howard J. Roin, and Gary S. Feinerman, of counsel), for appellant.

Rudnick & Wolfe, of Chicago (Seymour Simon, Stanley J. Adelman, Fredrick A. Cohen, and Paula D. Friedman, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Comdisco, Inc., appeals an order of the circuit court of Cook County ordering plaintiff and defendants Dun & Bradstreet Corporation (D&B), Dun & Bradstreet Computer Leasing (D&BCL), and Fillupar Leasing Partnership (Fillupar) to arbitrate a dispute regarding the fair market value of computer equipment that was the subject of sale/leaseback transactions between the parties.

This case is related to this court's prior decision in *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 285 Ill. App. 3d 796, 674 N.E.2d 902 (1996) (*Comdisco I*), which is briefly summarized here. On March 20, 1995, Comdisco filed a "Verified Complaint for a Declaratory Judgment and Other Relief" in the circuit court of Cook County. In this complaint, Comdisco alleged that on or about September 3, 1991, it entered into two sale/leaseback transactions with D&B and Fillupar (which later came under the control of D&BCL); given that the agreements used "virtually similar" language, the complaint refers to the transactions as one. For example, both leases provided that Comdisco had the right to terminate the leases on an "early termination date." In the event that Comdisco exercised this option, it would pay D&B the "early termination value" of the equipment. One definition of the "early termination value" was the "fair market value" of the equipment on the "early termination date." "Fair market value" was also defined in the leases. Each lease involved several categories of IBM and Amdahl equipment; each category had a different "early termination date."

Comdisco exercised its early termination rights as to all categories of equipment on the respective early termination dates. In June 1992, a dispute arose between the parties regarding the value of the equipment. The parties exchanged letters in June 1992 and met in July 1992 in an effort to resolve the dispute, but were not successful.

In September 1992, the parties exchanged letters regarding a proposed arbitration of their dispute. A draft of an agreement to submit the dispute to arbitration was being discussed by the parties by May 1994. In November 1994, the parties executed an arbitration agreement (Agreement). The first paragraph of the Agreement reads as follows:

"1. *AGREEMENT TO ARBITRATE.* The parties hereto hereby agree to submit to binding arbitration, in accordance with the terms of this Agreement, the disputes which have arisen (A) between Fillupar and Comdisco concerning the amounts, if any, owed by Comdisco to Fillupar under the terms of the Equipment Leases as a result of Comdisco's exercise of its early termination options with respect to each category of leased equipment, and (B) between

Dun & Bradstreet and Comdisco concerning the amounts, if any, owed by Comdisco to Dun & Bradstreet under the Equipment Value Certificates."

On November 11, 1994, the parties retained former Judge Nicholas J. Bua to arbitrate the dispute.

The parties conducted discovery in March 1995. D&B allegedly raised claims that it was entitled to a "volume premium" and an "in-place premium" for the first time during this discovery period. D&B alleged that these premiums would result in Comdisco owing an additional $18 million above what Comdisco had already paid for the equipment.

Accordingly, count I of the complaint sought a declaration that the Agreement was null and void. Count II alleged breach of contract. Count III alleged a breach of the covenants of good faith and fair dealing. Count IV alleged that defendants fraudulently induced Comdisco to enter into the Agreement. Count V alleged that there was no "meeting of the minds" regarding the Agreement. Count VI sought injunctive relief, staying the arbitration until the court determined which issues were arbitrable.

On April 6, 1995, the defendants filed a motion to compel arbitration pursuant to the Agreement. On May 3, 1995, the trial court entered an agreed order stating that defendants were not required to further answer or otherwise plead until the court ruled on the motion to compel. On October 13, 1995, following argument on the matter, the trial court entered an order denying defendant's motion to compel arbitration. The transcript of proceedings shows that the trial court based its ruling on counts IV and V of Comdisco's verified complaint. Defendants filed a Notice of Appeal to this court on October 24, 1995.

On appeal, this court held that there was not a showing sufficient to sustain the order of the trial court denying the motion to compel arbitration. This court relied on *Farris v. Hedgepeth*, 58 Ill. App. 3d 1040, 374 N.E.2d 1086 (1978), which held that the Uniform Arbitration Act contemplated a substantive disposition of a motion to stay arbitration before a stay order is entered. *Farris*, 58 Ill. App. 3d at 1044, 374 N.E.2d at 1089. This court also relied on section four of the federal Arbitration Act, which provides in part:

"If the making of the arbitration agreement *** be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4 (1970).

This court further relied on section 2(a) of the Uniform Arbitration Act, as adopted in Illinois, which provides in part:

"[I]f the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination

of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." 710 ILCS 5/2(a) (West 1994).

This court concluded that the trial court erred in denying the motion to compel arbitration without ruling on the arbitrability of the dispute. Thus, the judgment of the trial court was reversed and remanded for a summary disposition of the issue. See *Comdisco I*, 285 Ill. App. 3d at 801, 674 N.E.2d at 905.

On remand, the trial court held a two-day summary proceeding, which included the testimony of 3 witnesses and 32 exhibits, to assist the court in determining which issues were within the scope of the Agreement. On July 29, 1997, the trial court issued an opinion and order finding that: (1) the clear meaning of the agreement was that "all disputes relating to" fair market value were to be placed before the arbitrator; and (2) "no evidence was offered" that would support plaintiff's allegations that there was no meeting of the minds or fraudulent inducement.

On May 28, 1998, Comdisco filed a motion to modify the opinion and order, enter final judgment and stay enforcement of the judgment pending appeal. On May 29, 1998, Comdisco filed a notice of interlocutory appeal to this court. On July 13, 1998, the trial court held a hearing on the motion to modify, in which Comdisco noted that it had not been notified of the opinion and order by mail or telephone. The trial judge stated that he believed that Comdisco had relied on the standard operating procedures of his court, but ultimately denied the motion to modify.

On July 29, 1998, Comdisco sought leave to file an amended notice of appeal that would include the July 13, 1998, order. That same day, defendants filed a motion to dismiss the appeal for lack of jurisdiction. This court allowed Comdisco's motion and denied defendants' motion on September 3, 1998.

I

■ ■ Initially, this court addresses the question of jurisdiction. Although defendants' motion to dismiss has already been denied by this court, such an order is not a final judgment and the question of lack of subject matter jurisdiction may be raised at any time. Defendants rely primarily on cases such as *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 632 N.E.2d 1010 (1994), which holds that the 30-day period for filing a notice of appeal is not tolled by lack of actual notice of the entry of final judgment, so long as the order appealed from was expressed publicly in words at the situs of the proceeding. Plaintiff relies primarily on *Graves v. Pontiac Firefighters Pension Board*, 281 Ill. App. 3d

508, 667 N.E.2d 136 (1996), which held that the appellant was entitled to rely on a statement in a prior court order that the final judgment would be mailed to the parties.

■ In this case, defendants argue that *Graves* is not applicable because the trial judge did not tell the parties that he would mail the final judgment to the parties. Rather, the trial judge found that plaintiff relied on the standard operating procedures of the court and that he had intended to mail the final judgment to the parties. Defendants also note that the trial judge declined to sign an order stating that plaintiff so relied. However, the transcript shows that the trial judge did so because the proposed order would have granted plaintiff's motion to modify, which the trial court was denying.

The *Mitchell* court recognized the argument that equitable principles may toll the time for filing an appeal to correct a ministerial mistake or where a party relied on an erroneous direction of the judge. *Mitchell*, 158 Ill. 2d at 151, 632 N.E.2d at 1013.[1] In this case, the record shows that Comdisco relied on the trial court's standard operating procedure. The trial court's failure to follow that procedure warranted an equitable tolling of the time for filing an appeal. Accordingly, this court has jurisdiction to address the merits of the appeal.

## II

In this second appeal, Comdisco argues that the trial court erred in: (1) applying a presumption favoring arbitration to the Agreement; (2) holding that the Agreement required arbitration of all issues related to the fair market value of the equipment; (3) finding that all of the issues related to the fair market value of the equipment had arisen at the time the Agreement was executed; and (4) holding that no evidence was offered to support the claim that there was no meeting of the minds in this matter. It is useful to address the last argument first, as it goes to contract formation, as opposed to contract interpretation.

■ Comdisco argues that the trial court erred in holding that there was "no evidence" offered that there was no meeting of the minds, because Comdisco offered testimony that it intended the Agreement cover only one set of disputes (relating to the valuation dates for calculating the fair market value of the equipment), whereas defendants offered testimony that they intended the Agreement to cover additional disputes relating to the fair market value of the equip-

---

[1] The *Mitchell* court rejected the argument in that case, because the "mistake" at issue was a mistake of law on the part of the trial court and the appellant's counsel.

ment. Relying on *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30, 578 N.E.2d 981, 984 (1991), Comdisco claims there was no meeting of the minds because the Agreement lacked essential terms. However, the fact that parties may have differing interpretations of a contract or even that the terms of a contract may be ambiguous does not mean that no contract was formed. See, *e.g., Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 582, 641 N.E.2d 957, 963 (1994). The testimony offered by Comdisco itself establishes that the parties agreed to arbitrate disputes related to the fair market value of the equipment; the evidence shows that the real disagreement arises only as to the scope of the Agreement. Accordingly, the trial court did not err in holding that there was a meeting of the minds in this case.

■ The remaining issues Comdisco raises on appeal concern the trial court's interpretation of the Agreement. Before addressing Comdisco's specific arguments, it is useful to remember that this court's prior opinion in *Comdisco I* noted that the federal Arbitration Act and the Uniform Arbitration Act, as adopted in Illinois, require a summary disposition where "the making of the arbitration agreement" is an issue or "the opposing party denies the existence of the agreement to arbitrate." 285 Ill. App. 3d at 800.

The problem in arbitrability cases which this case exemplifies is that the issue of the formation of a contract is not always completely exclusive of the issue of the scope of a contract. This problem is exacerbated where words such as "dispute" and "issue" are used without fixed definition. *Comdisco I* required a summary proceeding on the issue of whether there was an arbitration agreement. Although this court stated that "[t]he issue of whether a dispute is or is not within the scope of an arbitration clause should be determined at the earliest possible moment" (*Comdisco I*, 285 Ill. App. 3d at 801, 674 N.E.2d at 905, citing *Farris*, 58 Ill. App. 3d at 1043, 374 N.E.2d at 1088), the word "dispute" in the above-quoted portion of *Comdisco I* assumes a broader meaning than a "question" or an "issue" within that dispute. *Comdisco I* should not be read as requiring the trial court to determine in all cases whether specific issues involved in the underlying dispute were subject to arbitration.

Indeed, there are two reasons why this court could not have required such an inquiry. First, the question of whether a contract existed remained open, because the trial court had not held the statutorily required summary proceeding. Second, while the trial court is to decide in the first instance whether there is an arbitration agreement, and may even decide the scope of the agreement where the terms are clear, where the parties are in conflict as to the scope of an agreement and the questions presented are reasonably debatable, such

questions are to be left to the arbitrator in the first instance. See *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 446-50, 530 N.E.2d 439, 444-46 (1988).

■ Thus, the remaining issue on appeal is whether the clear language used in the Agreement provides that all disputes relating to fair market value were to be placed before the arbitrator. If the Agreement is clear in scope, then the trial court was correct to send all issues relating to fair market value to the arbitrator for arbitration. If the scope of the Agreement is reasonably debatable, then the trial court properly ordered the parties to proceed to arbitration, but should have let the arbitrator address whether specific issues fell within the scope of the Agreement in the first instance.

As noted above, the Agreement provided in part as follows:

"1. *AGREEMENT TO ARBITRATE*. The parties hereto hereby agree to submit to binding arbitration, in accordance with the terms of this Agreement, the disputes which have arisen (A) between Fillupar and Comdisco concerning the amounts, if any, owed by Comdisco to Fillupar under the terms of the Equipment Leases as a result of Comdisco's exercise of its early termination options with respect to each category of leased equipment, and (B) between Dun & Bradstreet and Comdisco concerning the amounts, if any, owed by Comdisco to Dun & Bradstreet under the Equipment Value Certificates."

Comdisco argues that the Agreement limits the issues or disputes subject to arbitration to "disputes which [had] arisen" at the time the Agreement was executed. Comdisco argues that D&B's claims that it was entitled to a "volume premium" and an "in-place premium" were not raised at that time and therefore fall outside the scope of the Agreement. Defendants respond that the phrase "disputes which have arisen" was "not intended to limit the scope of the issues to be arbitrated but to introduce the basis for the agreement to arbitrate." Defendants maintain that "[t]he attorneys who drafted and negotiated the Arbitration Agreement (the attorneys currently representing the parties) surely did not intend the arbitrator to somehow divine what 'disputes had arisen.' " The trial court concluded that, reading the Agreement as a whole, there was no ambiguity and that "from the clear meaning of the language used *** [,] all disputes relating to FMV were to be placed before the arbitrator."

The trial court reasoned in part that had the parties intended to limit the arbitration to the question of valuation dates, they could have done so with clarity. This seems undeniable. On the other hand, if the parties had intended to arbitrate any and all disputes relating to the fair market valuation of the equipment, regardless of whether

such issue or dispute arose before or after the execution of the Agreement, they could have done so with equal clarity. For example, it is not uncommon for parties to word such clauses broadly to provide that "any claim or controversy arising out of" the underlying contract will be submitted to arbitration. See, *e.g., Donaldson, Lufkin & Jenrette Futures, Inc.*, 124 Ill. 2d at 445, 530 N.E.2d at 443-44.

Moreover, a reading of the entire Agreement does not give further context to the provision quoted above. Rather, a recital prior to the quoted provision uses almost identical language stating that "[d]isputes have arisen." There does not appear to be language in the Agreement that specifies the nature of these disputes, other than that they result from Comdisco's exercise of the early termination options.

Defendants note that the Agreement applies to the amounts, if any, owed "under the terms of the equipment leases." Paragraph 16(c)(1) of the equipment leases addresses the concept of fair market value where the early termination options have been exercised, providing in part as follows:

"[T]he fair market value of an Item of Equipment shall be the amount which would be obtainable for such Item of Equipment in an arm's length transaction between any informed and willing purchaser and an informed and willing seller, neither under any compulsion to buy or sell, considering the amount of Equipment purchased and all other relevant factors, but without considering the fact that some or all of such Equipment may be subject to a Sublease or the amount of rental payments pursuant to Subleases then in effect."

Defendants argue that the references to the amount purchased and "all other relevant factors" demonstrate that the Agreement "in no way restricts the factors that may be considered on the question of the equipment's fair market value."

Of course, the above-quoted provision of the equipment leases does exclude factors relating to subleases. The fact that the equipment leases provide that a number of factors may be considered in calculating fair market value following their early termination does not necessarily explain the nature of disputes that arose after the execution of the equipment leases, but before (or after) the execution of the Agreement.

Moreover, despite the trial court's comment that there was no ambiguity in the Agreement, the trial court's opinion and order regarding the scope of the Agreement refers to the testimony of the witnesses regarding correspondence among various parties. However, the trial court's task on remand was to determine whether there was an agreement to arbitrate and, if so, whether the scope of the agreement

was clear. If parol evidence was necessary to interpret the Agreement, the trial court should have simply ordered the dispute to arbitration, deferring the questions regarding specific issues of arbitrability to the arbitrator in the first instance.

In sum, the trial court did not err in ordering that the dispute be submitted to arbitration. However, given the record, the trial court should have left questions regarding the exact scope of the Agreement to the arbitrator in the first instance.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County finding that there is an arbitration agreement and ordering this case to be submitted to arbitration is affirmed; the portion of the circuit court opinion and order ruling on the scope of the Agreement is vacated; and the case is remanded for further proceedings consistent with this opinion.

Affirmed in part and vacated in part; cause remanded.

BUCKLEY and QUINN, JJ., concur.