2023 IL App (1st) 220265-U

SECOND DIVISION
May 16, 2023

No. 1-22-0265

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHAEL LAMBERT, | ) | |
| | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County, |
| v. | ) | Chancery Division. |
| | ) | |
| The CITY OF CHICAGO, the CHICAGO FIRE | ) | No. 2021 CH 2889 |
| DEPARTMENT, and the CHICAGO POLICE | ) | |
| DEPARTMENT, | ) | Honorable |
| | ) | Moshe Jacobius, |
|     Defendants-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concur in the judgement.

**O R D E R**

¶ 1    *Held*:  The appeal is dismissed for lack of jurisdiction.

¶ 2    This appeal stems from a cause of action filed by the plaintiff, Michael Lambert, against the defendants, the City of Chicago (the City), the Chicago Fire Department (CFD) and the Chicago Police Department (CPD), seeking injunctive relief pursuant to the Freedom of

Information Act (FOIA) (5 ILCS 140/1 *et seq*. (West 2020)). The plaintiff submitted two separate FOIA requests for records to the CPD and the CFD, both of which were related to an incident in which a member of the CFD struck and killed his wife with his vehicle. The CPD provided the plaintiff with some documents but denied that portion of his request that sought access to video and audio recordings. The CFD, on the other hand, denied the entirety of the plaintiff's request. The plaintiff filed the instant lawsuit seeking access to all the records he requested. After it reviewed the materials *in camera*, the circuit court determined that they were exempt from disclosure under the Act (5 ILCS 140/7(1)(a), (c), 7.5(h) (West 2020)) and entered judgment in favor of the defendants. The plaintiff now appeals, contending that dismissal of his action was improper because he was denied a chance to conduct discovery, and because the defendants' claimed exemptions were not specific or supported by an affidavit or any statement from individuals in the City, the CPD or the CFD. The plaintiff further argues that the statutory exemption relied on by the circuit court violates the Illinois Constitution's prohibition against special legislation. Ill. Const. 1970, Art. IV, § 13. For the following reasons, we find that we are without jurisdiction to consider this appeal.

¶ 3                                      II. BACKGOUND

¶ 4      The record before us reveals the following relevant and undisputed facts and procedural history. The incident that precipitated this litigation occurred on September 6, 2020, when CFD member, Angelo Toskolas, struck and killed his wife Mary Jo Tsokolas, with a vehicle, in front of their residence located at 3358 114th Street, Chicago. The CPD and the CFD conducted separate investigations into the incident. Those investigations led to the creation of records, including reports, witness statements, photographs, and video and audio recordings. Over the course of several months, from October 2020 to March 2021, the plaintiff, who is Mary Joe's uncle,

submitted FOIA requests to the CPD and the CFD seeking records and materials related to the incident.

¶ 5     On October 16, 2020, the CFD denied the plaintiff's request, indicating that the records could not be disclosed because the investigation was still pending. For the next six months, the CFD repeatedly denied the plaintiff's resubmissions, using the same rationale.

¶ 6     On November 5, 2020, the CPD provided the plaintiff with 169 documents related to the incident. After the plaintiff complained that the documents failed to disclose any video or audio recordings obtained by CPD members during their investigation of the incident, on June 8, 2021, the CPD sent the plaintiff additional materials, which included photographs but no video recordings.

¶ 7     On June 14, 2021, the plaintiff filed the instant lawsuit alleging violations of FOIA and seeking compelled disclosure of the records being improperly withheld by the defendants.

¶ 8     On July 7, 2021, the defendants filed their answer and affirmative defenses, denying all wrongdoing regarding the plaintiff's FOIA requests. While the defendants did not deny the partial disclosure of records by the CPD and the full denial of documents by the CFD, they asserted that the requests were properly denied because they were "unduly burdensome" and because the documents were exempt from disclosure under the Act. The defendants did not cite to any specific exemptions under the Act, but instead generally argued that they did not need to be disclosed "pursuant to one or more exemptions set forth in Section[s] 7 and 7.5 of FOIA." See 5 ILCS 140/7, 7.5 (West 2020).

¶ 9     The plaintiff sought to conduct limited discovery. On July 29, 2021, he noticed a deposition of Robert Earnshaw from the CPD. On August 8, 2021, he issued eight interrogatories to the defendants. In response, the defendants sent an email asserting that discovery was premature, and

"inappropriate at this time" because the matter was not ripe.

¶ 10    On August 6, 2021, the plaintiff filed a motion in the circuit court seeking to compel discovery. In addition, he filed a motion to require the defendants to prepare and produce an index of documents they were withholding.

¶ 11    On August 9, 2021, the circuit court denied the motion to compel without prejudice. The court, however, ordered the defendants to file an index of documents that were being withheld from the plaintiff.

¶ 12    On August 26, 2021, the defendants filed the index, listing 26 separate materials that they claimed were exempt from disclosure under FOIA. For each category, the defendants asserted that disclosure was exempt under section 7.5(h) of the Act because the records had been "turned over to [the] Office of [the] Inspector General to complete [an] investigation." 51 ILCS 140/7.5(h) (West 2020). For the video footage requested from the CPD, the defendants cited two additional exemptions. They claimed that the video footage was: (1) exempt under the Illinois Body-Worn Camera Act (the Body Camera Act) (50 ILCS 706/10-20(b) (West 2020)); and (2) that its disclosure would constitute a clearly unwarranted invasion of personal privacy for Angelo and Mary Jo and was therefore exempt under section 7(1)(c) of FOIA. See 5 ILCS 140/7(1)(a), (c) (West 2020)

¶ 13    Based on the information in the index, on September 7, 2021, the plaintiff filed a renewed motion to conduct discovery. The defendants did not file a response and the circuit court did not rule on this motion. Instead, on September 13, 2021, the court ordered the defendants to produce physical and electronic copies of all the materials listed in their index, including the CPD's video footage, for an *in camera* review, to evaluate the defendants' claimed exemptions. The court subsequently set the matter for a hearing "on asserted exemptions" on December 7, 2021.

¶ 14   On that date, with counsel for both parties present, the circuit court announced that after its *in camera* review of the documents listed in the index, it believed that all the withheld materials were exempt from disclosure under section 7.5(h) of the Act (5 ILCS 140/7.5(h) (West 2020)) because they were handed over to the Inspector General's Officer for an investigation. In addition, with respect to the video footage sought from the CPD, the court held that these materials were exempt under the Body Camera Act. See 50 ILCS 706/10-20(b) (West 2020); 5 ILCS 140/7(1)(a) (West 2020). Throughout its findings the court specified several times that it was relying on an affidavit submitted by the defendants. The parties on appeal, however, agree that no such affidavit was ever provided to the circuit court.

¶ 15   After explaining its findings, the circuit court clarified that this was its "suggested ruling," and that a draft judgment order had been prepared in advance of the hearing. The court then permitted the parties to make arguments. After hearing arguments by both parties, and upon plaintiff's counsel's request, the court agreed to add language to its order that would require the defendants to inform the plaintiff when the Inspector General's investigation was completed. The court then stated "So, with that we will issue the opinion. We'll add that, just that one sentence about defendants notifying the [p]laintiff." The court then reiterated that the order was "already done" but that it was best "before it's sent to you[,] we add that one sentence." The court then stated that this concludes "all the matter here."

¶ 16   On that same day, December 7, 2021, the circuit court entered a written judgment in favor of the defendants. A copy of the file-stamped order with the December 7, 2021, date was emailed to the plaintiff's counsel on the following morning, December 8, 2021.

¶ 17   The written order mirrors the court's oral findings made at the December 7, 2021, hearing. Specifically, the order states that the materials requested from the CFD are exempt from disclosure

5

under section 7.5(h) of FOIA (5 ILCS 140/7.5(h) (West 2020)) because they were submitted to the Inspector General's Office for an investigation. The order further includes language that states that the defendants "shall notify" the plaintiff "when the investigation into this matter" by the Inspector General is "complete."

¶ 18    In addition, the written order provides that based on the court's *in camera* review, the body camera footage sought from the CPD is exempt from disclosure for two additional reasons. First, the Body Camera Act prohibits disclosure of the footage because the plaintiff did not request the footage as a subject of the videos, and no other statutory predicates for disclosure are present (*i.e.*, the filing of a complaint, discharge of a firearm, use of force, arrest or detention, or resulting death or bodily harm). See 5 ILCS 140/7(1)(a) (West 2020); 50 ILCS 706/10-20(b) (West 2020). In addition, neither the injuries nor the death of Mary Jo were recorded by the body-worn cameras, nor were they the result of any actions by the responding officers. *Id*. Second, according to the written order, the footage is exempt from disclosure under section 7(1)(c) of FOIA (5 ILCS 140/7(1)(c) (West 2020)) because releasing it to the public would constitute a clearly unwarranted invasion of privacy, as it depicts a scene of a highly personal nature to the Toskolas family.

¶ 19    On January 7, 2022, 31 days after the circuit court entered its written order, the plaintiff filed a motion to reconsider. At the hearing on that motion, on January 26, 2022, the defendants asserted that the court was without jurisdiction to consider the motion because it was filed one day late. The court stated that "it believed" the motion was filed "within the 30 days," because it was filed on January 7, and the written order was filed on December 7. The judge mentioned that a glitch with the e-filing system delayed the scheduling of the motion and conceded that he was "not the best with math" but reiterated that based on his calculations if the order was filed on

December 7 and the motion was filed on January 7, "it looked like it was within the 30 days."

¶ 20    The plaintiff's counsel then stated that the parties received the judgment order on December 8, 2021. The court responded in the following manner:

"Yes, I don't know when it was stamped, because you know, the fact - I mean, we certainly thought it was within the 30 days *** [I]t's a little bit of a challenge, because we're doing things remotely. So[,] when you're in a courtroom, they stamp it immediately, and you give the lawyer the order. Here, we're sending it over the Internet. And sometimes it is stamped the day before, and then the attorney might receive it a day later. That could be problematic."

The circuit court then denied the plaintiff's motion to reconsider on the merits. The plaintiff now appeals.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, the plaintiff contends that dismissal of his action was improper because he was denied a chance to conduct discovery and because, contrary to the circuit court's findings, none of the exemptions asserted by the defendants were supported by an affidavit from either the CPD or the CFD. The plaintiff further argues that section 7.5(h) of the Act (5 ILCS 140/7.5(h) (West 2020)), relied on by the circuit court to excuse the disclosure of the requested records, violates the Illinois Constitution's prohibition against special legislation. Ill. Const. 1970, Art. IV, § 13.

¶ 23    The defendants concede that reversal is proper with respect to all the withheld records, except for the video footage from the body-worn cameras of the CPD officers who responded to the incident. The defendants agree that no affidavit supporting the documents listed in the index was ever provided to the circuit court and that therefore the court's reliance on such an affidavit

was improper. The defendants nonetheless assert that the video footage was properly exempt from disclosure under the Body Worn Camera Act (50 ILCS 706/10-20(b) (West 2020)). More importantly, however, the defendants argue that regardless of the merits of the plaintiff's contentions, we are without jurisdiction to consider this appeal.

¶ 24     Unfortunately, after a review of the record below, we are compelled to agree with the defendants and hold that the plaintiff's notice of appeal was untimely field and that we therefore have no jurisdiction to consider the merits of this appeal.

¶ 25     At the outset, we note that before filing their brief in this appeal, the defendants moved to dismiss the appeal for want of jurisdiction, which a justice of this court denied. That denial, however, "is not final and must be modified by the panel hearing the appeal where jurisdiction is lacking." *In re Marriage of Teymour and Mostafa*, 2017 IL App (1st) 161091, ¶ 10. Indeed, "[t]he panel that hears the appeal has an independent duty to determine whether it has jurisdiction and dismiss the appeal if it does not." *In re Estate of Gagliardo*, 391 Ill. App. 3d 343, 349 (2009).

¶ 26     Whether a court has jurisdiction to consider an appeal presents a legal question to be determined *de novo* without deference to the trial court's reasoning. See *In re Marriage of Teymour*, 2017 IL App (1st) 161091, ¶ 10; *Stasko v. City of Chicago*, 2013 IL App (1st) 120265, ¶ 27; *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755,¶ 20.

¶ 27     Illinois Supreme Court Rule 303(a) requires a party appealing from a judgement in the circuit court to file a notice of appeal within 30 days after entry of the final judgment, or if a timely postjudgment motion against the judgment is filed, within 30 days from the entry of the order disposing of the last postjudgment motion. Ill. S. Ct. R. 303(a) (eff. July 1, 2017). To toll the time for filing a notice of appeal, a postjudgment motion must be filed within 30 days of the

final judgment. *Id*.; see also *Lampe v. Pawlarczyk*, 314 Ill. App. 3d 455, 469-70 (2000) (holding that a postjudgment motion filed more than 30 days after the entry of the final judgment did not toll the time for filing the notice of appeal).Where a posttrial motion directed against the judgment is not filed within 30 days, the clock starts running on the day of the entry of the final order. *Id*.; see also *Won v. Grant Park 2, L.L.C.,* 2013 IL App (1st) 122523, ¶ 20.

¶ 28    Compliance with the deadlines for appeals set forth in Supreme Court Rule 303 is mandatory and jurisdictional. *Berg v. White*, 357 Ill. App. 3d 496, 499 (2005);*Won,* 2013 IL App (1st) 122523, ¶ 20. "Strict compliance with supreme court rules governing the time limits for filing a notice of appeal is required and neither a trial court nor an appellate court has the authority to excuse compliance with the filing requirements mandated by the supreme court rules." *Won,* 2013 IL App (1st) 122523, ¶ 20; *Graves v. Cook County Republican Party*, 2020 IL App (1st) 181516, ¶ 30. When an appeal is untimely, this court has no discretion to take action other than to dismiss the appeal. *Won,* 2013 IL App (1st) 122523, ¶ 20.

¶ 29    In the present case, the 30-day deadline for the plaintiff to file either a postjudgment motion or a notice of appeal began to run on December 7, 2021, when the judgment order was file-stamped as entered. The 30th day from the final judgment was January 6, 2022. The plaintiff, however, filed his postjudgment motion on January 7, 2022, 31 days after the entry of the final judgment. His motion therefore did not toll the 30-day deadline to file his notice of appeal. Accordingly, the plaintiff's notice of appeal, filed on February 23, 2022, was untimely, and we have no option but to dismiss his appeal. *Won,* 2013 IL App (1st) 122523, ¶ 20.

¶ 30    The plaintiff concedes that he filed his postjudgment motion on January 7, 2022, 31 days after the circuit court's written order was file-stamped. He nonetheless asserts that this court should ignore that file-stamp, and instead deem December 8, 2021, the date of the entry of the

final judgment, as this was the day his counsel actually received an email with the written order. The plaintiff points out that during the hearing on December 7, 2021, the trial judge made various comments indicating that "several aspects of the case were left up in the air," and that his "standard operating procedure" was to issue an opinion "by sending it over the Interent" at a later date. He therefore contends that he reasonably relied on the judge's statements and believed that the 30-day deadline to file his postjudgment motion was tolled by one day. In support, the plaintiff cites to this appellate court's decision in *Comdisco, Inc. v. Dun & Bradstreet Corp*, 306 Ill. App. 3d 197, 202 (1999), which held that the trial court's failure to follow its "standard operating procedure" in mailing its final judgment to the parties warranted an equitable tolling of the time for filing an appeal. For the following reasons, we disagree and find that case inapposite.

¶ 31     At the outset we disagree with the plaintiff's characterization of what transpired at the December 7, hearing. Contrary to the plaintiff's position, even though the circuit court initially described its findings as its "suggested" ruling, it subsequently allowed the parties to make arguments. After the parties discussed the possibility that the defendants could notify the plaintiff when the Inspector General's Office completed its investigation, the court indicated that it could add that language to its opinion. The court then explicitly stated "[s]o, with that we'll issue the opinion. We'll add that, just that one sentence about defendants notifying the [p]laintiff." The court then stated that the opinion was "already done," and that this resolved "all the matter here." The court nowhere indicated that there were aspects of the case that still needed to be resolved, nor explicitly stated that its "standard operating procedure" would be to send the opinion by email to the parties at a later date. Consistent with the court's oral pronouncement, the written opinion was issued on that same day. Accordingly, contrary to the plaintiff's position, nothing in

the court's statements during the December 7, hearing, can be reasonably read as tolling the time for filing the plaintiff's postjudgment motion.

¶ 32    Moreover, even if the court's statements could be read as such, our supreme court has repeatedly rejected the position that the requisite 30-day period in which to file a postjudgment motion is tolled until the parties have actual notice of the circuit court's final order. See *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City,* 141 Ill. 2d 122, 123 (1990); *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 148-150 (1994).

¶ 33    In *Mitchell*, the circuit court signed its order disposing of the case on February 27, 1991. The order was file-stamped March 1, 1991, and included directions to the clerk of the circuit court to send a copy of the order to the attorneys of record. *Mitchell*, 158 Ill. 2d at 146. On April 25, 1991, Mitchell's counsel learned that the court had entered a ruling in the case. After conferring with opposing counsel and the court, Mitchell's counsel filed a section 2-1401 petition (Ill. Rev. Stat. 199, ch. 110, par. 2-1401) to withdraw or vacate the February 27, 1991, order. *Id*. On April 29, 1991, the court granted Mitchell's petition, withdrew the judgment dated February 27, 1991, and reentered the same order, effective April 29, 1991. *Id*. at 146-47. Mitchell filed a timely notice of appeal of that order, and the appellate court upheld jurisdiction and considered Mitchell's appeal on the merits. *Id*. at 147.

¶ 34    Our supreme court reversed, concluding that the appellate court "improvidently took jurisdiction over Mitchell's appeal." *Id*. at 148. In so concluding, the court reiterated its prior holding in *Granite City*, that " 'actual notice [of the trial court's judgment] is not required, so long as the order appealed from was expressed publicly, in words and at the situs of the proceeding.' " *Id*. (quoting *Granite City*, 141 Ill. 2d at 123). The court reiterated that an order is deemed to have become public when it is filed with the clerk of the court, and that Rule 303

"requires attorneys to monitor their cases to insure that appeals are timely filed." *Id*. at 150; see also *Granite City,* 141 Ill. 2d at 127.

¶ 35    The *Mitchell* court also emphasized that trial courts lack the authority to extend the time for filing a notice of appeal. *Id*. at 149. The court explained, in part, as follows:

"The appellate court expressed concern over the unfairness of penalizing the litigant because his attorney relied on the circuit court's incorrect directive. We are not insensitive to the concern expressed by the appellate court in the instant case. However, this court has general supervisory authority to oversee the administration of its own rules in the statewide system of courts. The circuit court's attempt in the instant case to assist Mitchell's counsel is understandable and well-intentioned, *but neither the trial court nor the appellate court has the 'authority to excuse compliance with the filing requirements of the supreme court rules governing appeals.'*" (Emphasis added.) *Id*. at 150 (quoting *In re Smith,* 80 Ill. App. 3d 380, 382 (1980)).

¶ 36    Applying *Mitchell* to the present case, we are compelled to conclude that the circuit court's final judgment was expressed publicly, in words and at the situs of the proceedings on December 7, 2021, when the written order was file-stamped by the clerk of the circuit court. *Mitchell*, 158 Ill. 2d at 148-49; *Granite City*, 141 Ill. 2d at 126-27. Indeed, the circuit court's online docket confirms that the final order was entered on December 7, 2021.[1] As already discussed above, the plaintiff therefore had until January 6, 2022, to file his postjudgment motion in order to toll the 30-day notice of appeal. Since the plaintiff filed his postjudgment motion on January 7, his motion was untimely, and did not toll the requisite deadline. The fact that the plaintiff did not receive actual notice of the final judgment order until December 8, 2021, is of no

---

[1] See *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 24, n.4 (the appellate may take judicial notice of the online docket reports of the circuit court of Cook county.)

consequence since it was the plaintiff's counsel's duty to "monitor his case closely enough" to know when the circuit court had ruled. *Mitchell*, 158 Ill. 2d at 149.

¶ 37    The plaintiff's reliance on *Comdisco*, 306 Ill. App. 3d 197, to challenge this position, is unavailing. In that case, the trial judge issued a written opinion on July 29, 1997. *Id*. at 201. Nearly a year later, on May 29, 1998, Comidsco filed a motion to modify that order and to enter final judgment. At a hearing on the motion to modify and enter final judgment, Comidsco argued that it had never been notified of the ruling by either mail or telephone. *Id*. The trial judge stated that he believed that Comidsco had "relied on the standard operating procedures" of the circuit court but nonetheless denied the motion to modify. *Id*.

¶ 38    On appeal, this court held that because the trial judge's statements in the record indicated that Comidsco had relied on the court's "standard operating procedure," the trial court's failure to follow that procedure warranted an equitable tolling of the time for filing an appeal. *Id*. at 202. Accordingly, we held that we had jurisdiction to consider the merits of the appeal. *Id*.

¶ 39    At the outset, we note that *Comdisco* is inconsistent with our supreme court rules and the holding in *Mitchell*, both of which clearly hold that the appellate court does not have the "authority to excuse compliance with the filing requirements mandated by the supreme court rules." *Won,* 2013 IL App (1st) 122523, ¶ 20; *Graves*, 2020 IL App (1st) 181516, ¶ 30; see also *Mitchell*, 158 Ill. 2d at 150 (holding that an attorney cannot be excused from following the filing requirements of Rule 303 merely because a lower court has recommended a procedural route that lies beyond that court's authority to follow); see also *Martin v. Cajda*, 238 Ill. App. 3d 721, 728 (1992) ("a trial court's misapprehension of the law [will not] allow an appellant to file his notice of appeal more than 30 days after the trial court issues what actually constitutes a final order.").

¶ 40    Regardless, however, we also find that the facts of *Comdisco* are distinguishable from the

instant case. Unlike in *Comidsco*, the record before us fails to show that the plaintiff's failure to timely file his notice of appeal was due to his reliance on the court's standard operating procedure as opposed to his failure to monitor his case. Unlike *Comidsco* where the plaintiff asserted that he never received the trial court's written order and was therefore never notified of the court's ruling by either mail or telephone, in the present case, after the trial judge explained its ruling in open court, and indicated that he was issuing an opinion, that same-day file-stamped opinion, was emailed to the plaintiff's counsel the next morning. The plaintiff himself concedes that his counsel received the email with the file-stamped order on December 8. It was counsel's duty, upon receipt of that email, to check the file-stamp on the written order, and to monitor the deadlines for his own case. Counsel should have immediately realized that he had 30 days from the date of the file-stamped order, and 29 days from the date that he received the court's email, in which to file his postjudgment motion. The fact that he chose to wait until January 7, 2022, 31 days after the final order was entered, and a day after the requisite deadline, was clearly an oversight and not the result of any reliance on the court's standard operating procedure. Accordingly, *Comidsco* does not apply.

¶ 41    For these reasons, we are compelled to conclude that we have no jurisdiction to consider this appeal.

¶ 42    Appeal dismissed for lack of jurisdiction.